CHARLES E. WARING, APPELLANT, v. JOHN P. O'NEILL, RECEIVER OF THE CONTINENTAL INSURANCE COMPANY, RESPONDENT.

*Insolvent company — when policy-holder cannot deduct the value of his policy from a mortgage held by the company on his land — Controversy submitted, triable at General not Special Term.*

On the 31st of March, 1877, a life insurance company was dissolved, and the defendant appointed its receiver. On that day plaintiff held a paid-up policy in the company for $6,000, to procure which in a solvent company would then have cost $3,600. At that time the company held a bond and mortgage, given by one Ackerman for $8,500, payable June 1, 1877. On July 27, 1877, Ackerman sold the property to plaintiff subject to the mortgage, which plaintiff assumed and agreed to pay. This action was brought by him to redeem the mortgage, upon paying what was due thereon, after deducting the $3,600. *Held*, that the action could not be maintained.

*Quære*, as to the rights of the holder of a paid-up policy, against the receiver of an insolvent company.

Under section 1281 of the Code of Civil Procedure, as under section 372 of the Old Code, a controversy submitted upon agreed facts, is to be tried at the General Term, and it is irregular to have it heard in the first instance at Special Term.

*Quære*, as to the power of a receiver of an insolvent insurance company to submit a controversy upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure.

APPEAL from a judgment entered on the decision of the court at Special Term, denying the set-off claimed by the plaintiff herein, and ordering that the action be dismissed with costs. The case was heard at Special Term as a controversy submitted upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure. The statement alleged, among other things, that the plaintiff was the owner and holder of a paid-up policy of insurance upon the life of the plaintiff for the sum of six thousand dollars, issued by the Continental Life Insurance Company of the city of New York, a corporation duly organized under the laws of this State. That the amount of premiums paid by the plaintiff to said Continental Life Insurance Company, and which forms the consideration of said contract or policy of insurance, was the sum of three thousand nine hundred and seventy-five dollars and sixty

cents. That the said Continental Life Insurance Company lately failed and became insolvent; and an order was heretofore made by this court, at a Special Term thereof held at the city hall, in the city of Kingston, on the 31st day of March, 1877, on the application of the Attorney-General of this State, by which it was ordered and decreed that the said corporation, the Continental Life Insurance Company, be and the same is hereby excluded from its corporate rights, privileges and franchises, and dissolved; and that a distribution of its effects be made, in such manner as this court shall hereinafter direct. That in and by such order the defendant, John P. O'Neill, Esquire, of the city of New York, was appointed receiver of the goods, chattels, credits and effects of of the said corporation, to wind up and settle the affairs of said corporation, with the usual powers of receivers in like cases. That amongst the assets of the said Continental Life Insurance Company which passed to the said receiver by virtue of his said appointment, and which are now held by the said receiver, was a bond and mortgage made and executed to the said Continental Life Insurance Company, by John W. Ackerman and wife, of the city of Yonkers, to secure the payment of the principal sum of eight thousand five hundred dollars, and the interest to grow due thereon. That the premises covered by the said mortgage were owned by said Ackerman, the mortgagor, at the time of the dissolution of the said company, and the appointment of said receiver. That subsequently, and on or about the 25th day of July, 1877, the said John W. Ackerman and wife duly sold and conveyed to the plaintiff the said property covered by the said mortgage, subject thereto ; and the plaintiff assumed and became liable to pay the amount of the said bond and mortgage as part of the purchase-money on such conveyance; and that the plaintiff is still the owner of the said property, subject to the payment of the said mortgage. That at the time of the execution of the said deed said plaintiff knew of the dissolution of said company, and the appointment of the defendant as its receiver as aforesaid. That the amount it would cost to obtain a paid-up policy in any other good and solvent life insurance company to the amount of six thousand dollars, upon the life of the plaintiff, at his age, at the time of the insolvency and dissolution of the said Continental

Life Insurance Company, was the sum of thirty-six hundred dollars. That the affairs of the said Continental Life Insurance Company were in process of settlement and liquidation, and that it was impossible at that time to ascertain and state the amount that would be realized from said assets, and to fix the percentage that the said assets would pay the policy-holders and creditors of the said company. The plaintiff prayed judgment that he might redeem the said bond and mortgage of John W. Ackerman, by paying the amount due thereon, less the amount due the plaintiff from the said Continental Life Insurance Company on account of said policy, to the end that said mortgage might be satisfied of record, or for such other or different relief as to the court should seem meet. The defendant insisted that the plaintiff was not entitled to redeem said bond and mortgage, except by paying the full amount thereof in cash.

*R. W. Van Pelt*, for the appellant. The receiver could have brought an action directly against Waring on his promise made to Ackerman to pay his debt to the company, as and for part of the purchase-money of the property. (*Lawrence* v. *Fox*, 20 N. Y., 268; *Burr* v. *Beers*, 24 id., 178; *Barbour* v. *Myers*, 64 id., 41.) Waring could then have set up his counter-claim for the amount due to him on his policy. Or if the receiver had brought an action to foreclose the mortgage, he would have been entitled to a judgment against him for deficiency. In such case, also, Waring could have set up this counter-claim. (*Hunt* v. *Chapman*, 51 N. Y. , 261; *Bathgate* v. *Haskins*, 63 id., 261; *Lathrop* v. *Godfrey*, 6 N. Y. Sup. Ct. [T. & C.], 3 Hun, 739.)

*Wingate & Cullen*, for the respondent. The purchase of the property covered by the mortgage in question, and the assumption of the payment of the latter by the plaintiff being subsequent to, and with knowledge of, the appointment of the receiver, no right of offset was thereby obtained. (2 Edm. Revised Statutes, 49, § 36; *Matter of Van Allen*, 37 Barb., 225, 227; *Pardo* v. *Osgood*, 2 Abb. Pr. [N. S.], 365; *Smith* v. *Brinckerhoff*, 2 Seld., 305, affirming 8 Barb., 519; Supreme Ct., 1807, *Ogden* v. *Cowley*, 2 Johns., 274; *Driven* v. *Phelps*, 34 Barb., 224; *McLaren* v.

*Pennington and others*, 1 Paige, 102; *Johnson* v. *Bloodgood*, 1 Johns. Cas., 51; *Hagerman* v. *Hyslop*, Anth. N. P., 269; *Thompson* v. *Hoorker*, 4 N. Y. Legal Obs., 17; *Wells* v. *Stewart*, 3 Barb., 40; *Hicks* v. *McGrorty*, 2 Duer, 295; *Kendall* v. *Rider*, 35 Barb., 100; *Clark* v. *Brockway*, 1 Abb., Ct. Ap. Dec., 353; *Haxton* v. *Bishop*, 3 Wend., 13; *Matter of Middle Dist. Bank*, 1 Paige, 585; *Swords* v. *Blake*, 3 Edw., 112; *Matter of The Empire City Bank*, 18 N. Y., 227.)

LEARNED, P. J.:

No question was made by either party on the argument as to the authority of a receiver to submit a controversy, without action, under section 1279 of the New Code. In deciding this case, therefore, we are not to be considered as expressing any opinion in that respect.

Upon the argument, it was stated that, under the New Code, a case submitted was to be heard, in the first instance, at the Special Term, as was done in this instance. We are unable to find any authority for this view. Section 1281, like the corresponding section 372 of the Old Code, directs that the trial shall be had at the General Term. The proceedings, therefore, in this case at the Special Term seem to have been unauthorized; and, in strictness, the judgment might, perhaps, be reversed on that ground. But, as the parties have argued the merits of the case, we may treat this as the trial, without reference to the former proceedings.

At the time of the dissolution of the company and the appointment of the defendant as receiver, on the 31st of March, 1877, the plaintiff held what is called a paid-up policy in the company for $6,000. That is, he held an agreement, on the part of the company, that, for a certain consideration already received, the company would pay to his legal representatives, ninety days after notice of his death, $6,000; subject, however, to certain conditions which might forfeit the claim. The policy also contained the condition that any indebtedness to the company should be first deducted therefrom.

It is agreed between the parties that, to obtain a paid-up policy to the like amount on the plaintiff's life, from a good and solvent

company at the time of such insolvency and dissolution, would have cost $3,600.

Among the assets of the company which passed to the receiver was a bond and mortgage of one Ackerman for $8,500 and interest, payable June 1, 1877. Ackerman was the owner of the land at the time of the dissolution and of the appointment of the receiver. Afterwards, on the 25th of July, 1877, Ackerman sold the mortgaged property to the plaintiff, subject to the mortgage; and the plaintiff assumed and agreed to pay this mortgage as a part of the purchase-money. The plaintiff now asks that he may set off the sum of $3,600, which it would cost him to purchase another policy on his life, against so much of the mortgage debt, and that he may redeem the mortgage on paying the balance.

We do not think it is necessary, in this case, to decide just what are the claims of the plaintiff upon his policy. That question is not without its difficulties. Whether the failure of the company is to be considered a breach of its contract of insurance; and, if so, what are the plaintiff's damages—whether or not, on a distribution of the assets, he will be entitled to the amount of his policy, less a discount for the time when it would probably become payable—these and many similar questions might have a bearing on the present case, in determining the extent of the plaintiff's claim.

But, passing these and assuming, for the purposes of this case (what may not be true in fact), that, at the dissolution of the company, the plaintiff was a creditor for a debt then payable, can he have the set-off which he asks?

It is not denied by the plaintiff that, if Ackerman, after the insolvency and the appointment of a receiver, had bought a claim (for instance the plaintiff's) against the company, this could not have been set off against Ackerman's debt on his bond. And this is for the plain reason, as it seems, that the rights of debtors and creditors must be determined by their condition at the time of the appointment. The debtor is liable to pay his debt. The creditor is entitled to his *pro rata* share of the assets. Whatever claims the debtor of the company then had against it may be set off, and no others.

But the plaintiff seeks to evade this general principle by making

himself, after the appointment of the receiver, a debtor to the receiver by his own voluntary act, to which the receiver is not a party. His position is this, that, after the appointment of a receiver, a debtor to the company may pay that debt to a creditor of the company; that such creditor may, in consideration thereof, agree with the debtor to pay to the receiver the debt which the debtor owes; and then that the creditor may have the debt which he has thus assumed, discharged by a set-off of his own claim against the company, to the extent of its full amount. This is plainly contrary to the principle above stated.

The doctrine for which the plaintiff contends would enable any creditor of an insolvent company to get his claim in full, if he could induce some debtor of the company to pay to him the debt, on consideration of his agreement to assume such debt then owing to the receiver. It does not change the character of the plaintiff's position that, in this case, the debt of Ackerman was secured by a mortgage. Nor does it make any difference that Ackerman transferred land and not money to the plaintiff as the consideration of the plaintiff's agreement to assume Ackerman's debt.

Still, the fact is plain that, when the company became insolvent, Ackerman owed it a debt. To this debt the receiver became entitled, and he might collect it from Ackerman personally or from the land. On the other hand, the plaintiff, even if he were a creditor of the company for a debt presently payable, was entitled to have from the receiver only a *pro rata* share of the assets. He cannot, by agreeing with Ackerman to assume Ackerman's debt to the receiver, prevent the receiver from collecting the full amount thereof.

Ackerman's debt was owing to its full amount when the receiver was appointed. The full amount thereof was owing when the plaintiff assumed to pay it; and his agreement was to pay the same to the receiver who then owned the claim. On the other hand, at the time when the plaintiff made this agreement to pay the receiver, his only claim against the receiver was a right to share *pro rata* in the assets when they should be distributed. The receiver owed the plaintiff no debt, but was only under an obligation to distribute to him what should finally appear to be his portion. The plaintiff claims that he has become the principal debtor

by his assuming the mortgage. So, too, if he had borrowed money of the receiver on bond and mortgage, he would be the principal debtor. But if he had himself borrowed this money of the receiver, after the dissolution, on his own bond and mortgage, he could not set off against such loan the whole amount of his claim against the company, while it was uncertain what dividend the receiver might make. And he stands no better in this case than if he had himself borrowed the money from the receiver. For his obligation to pay was not contracted until after the appointment of the receiver; and he was never, in any way, a debtor to the company during its existence upon this bond or debt. For this reason, he cannot claim any benefit from the provision in the policy that an indebtedness to the company is to be deducted before payment. He never contracted with the company to pay this bond.

A judgment, therefore, must be entered on the submission declaring that the plaintiff is not entitled to redeem the bond and mortgage, except by paying the full amount thereof in cash, with costs against the plaintiff.

Present—LEARNED, P. J., BOARDMAN and MARTIN, JJ.

Judgment ordered for defendant on submission, with costs.